PASHMAN STEIN, P.C.
MICHAEL S. STEIN
JOHN T. WHIPPLE
SEAN MACK
Court Plaza South
21 Main Street, Suite 100
Hackensack, NJ 07601
Telephone: 201/488-8200
201/488-5556 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK S. REICH
CHRISTOPHER M. BARRETT
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT DUVALL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PAR PHARMACEUTICAL COMPANIES, INC., PETER S. KNIGHT, PATRICK G. LEPORE, RONALD M. NORDMANN, THOMAS P. RICE, MELVIN SHAROKY, JOSEPH E. SMITH, PATRICK J. ZENNER, TPG CAPITAL, L.P., SKY GROWTH HOLDINGS CORPORATION, and SKY GROWTH ACQUISITION CORPORATION, <br><br> Defendants. | No. <br><br> MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION BY ORDER TO SHOW CAUSE FOR EXPEDITED DISCOVERY |

This case concerns the proposed sale of Par Pharmaceutical Companies, Inc. ("Par Pharma" or the "Company") to TPG Capital, L.P. and its affiliates,[1] pursuant to which Par Pharma shareholders will receive $50.00 in cash for each share of common stock they own (the "Proposed Transaction"). Plaintiff, who brought this action to challenge the Proposed Transaction, now respectfully submits this memorandum of law in support of his motion for expedited discovery.[2] As detailed herein, the narrowly tailored expedited discovery sought here is necessary to develop an adequate factual record in support of Plaintiff's forthcoming motion to preliminarily enjoin the Proposed Transaction.

## I. PRELIMINARY STATEMENT

Plaintiff, Robert Duvall, a shareholder of Par Pharma, brought this action against the Company, its Board of Directors (the "Board"), alleging breaches of fiduciary duties, and further against TPG, alleging the aiding and abetting of such breaches. More specifically, Plaintiff alleges that the Board breached its fiduciary duty by: (i) failing to ensure that common shareholders will receive maximum value for their shares; (ii) locking up a sale of the Company to TPG by agreeing to various deal protection provisions in the July 16, 2012 Agreement and Plan of Merger ("Merger Agreement"); and (iii) hiring a conflicted financial advisor to advise the Company in connection with the Proposed Transaction.

---

[1] Pursuant to the plan of merger, Sky Growth Acquisition Corporation ("Acquisition Sub") will merge with and into Par Pharma, with Par Pharma being the surviving corporation. Acquisition Sub is a direct, wholly owned subsidiary of Sky Growth Holdings Corporation ("Sky Growth Holdings"), which upon information and belief is controlled by TPG Capital, L.P. ("TPG Parent"). TPG Parent, Sky Growth Holdings, and Acquisition Sub are collectively referred to herein as "TPG."

[2] A [Proposed] Order providing the relief requested herein is annexed as Ex. 1 to the Declaration of Mark S. Reich, dated August 15, 2012, to which all exhibits referenced herein are annexed.

Further, in eliciting support of the sale, the Board breached its fiduciary duties and violated federal securities laws by issuing materially false and misleading statements in the Proxy (defined below) and by failing to disclose material information necessary to enable Par Pharma shareholders to make an informed decision about how to vote their shares, including, among other things, information about: (i) the process resulting in the Proposed Transaction; (ii) the analyses conducted by Par Pharma's financial advisor, J.P. Morgan Securities LLC ("JP Morgan"); (iii) the nature of JP Morgan's prior services to or retentions by Par Pharma and TPG; and (iv) the Board's consideration, if any, of JP Morgan's conflict of interests.

As it currently stands, Par Pharma shareholders will be forced to vote on the Proposed Transaction without knowing all of the material facts. Further, the irreparable harm arising from the deal protections, the materially false and misleading statements, and the inadequate disclosures is exacerbated because the Proposed Transaction is expected to close this year.

For this reason, Plaintiff seeks expedited discovery to develop an adequate factual record in anticipation of his forthcoming motion to preliminarily enjoin the Proposed Transaction. Plaintiff has shown good cause for expedited discovery as it is reasonable under the instant facts. *First*, the requests are narrowly tailored and "appear[] reasonably necessary to enable this Court to judge the parties' interests and respective chances for success on the merits a preliminary injunction hearing." *Nest Int'l, Inc. v. Balzamo*, No. 12-cv-2087, 2012 WL 1584609, at *2 (D.N.J. May 3, 2012) (citation omitted). *Second*, the burden on Defendants is minimal as the discovery sought is readily available and, thus, can be gathered and produced at minimal cost and in an expedited manner.

*Finally*, and above all, the sought discovery is vital to develop an adequate factual record in advance of Plaintiff's anticipated motion to preliminary enjoin the Proposed Transaction, which is expected to close *during 2012*. Due to the accelerated pace of this matter and because the weighing of the overall administration of justice against the prejudice to the responding party supports the

expedition of discovery, Plaintiff's motion should be granted. *See Better Packages, Inc. v. Zheng*, No. Civ. A. 05-4477, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006) (the "good cause"/reasonableness test "weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party") (citation omitted).

## II.  STATEMENT OF FACTS

### A.  Procedural History of this Litigation

Following the announcement of the Proposed Transaction on July 16, 2012, Plaintiff initially filed an action in the Superior Court of the State of New Jersey, Chancery Division, Bergen County, on July 30, 2012, alleging that the Board of Par Pharma, a Delaware corporation headquartered in Woodcliff Lake, New Jersey, breached its fiduciary duties in connection with the Proposed Transaction by failing to secure maximum value for the Company's shares in violation of Delaware law, and that TPG aided and abetted those breaches. On August 6, 2012, Plaintiff's counsel issued a subpoena commanding JP Morgan to produce certain documents relevant to the underlying claims in this action.

On August 2, 2012, Par Pharma filed its Preliminary Proxy on Schedule 14A (the "Proxy") with the U.S. Securities and Exchange Commission.  Although the document described various aspects of the Proposed Transaction, it contained materially false and misleading statements in violation of federal securities laws and failed to disclose material information necessary to enable Par Pharma's public shareholders to cast an informed vote on the transaction in violation of fiduciary duties, including, for example, background information about the sales process and information concerning the analyses underlying JP Morgan's fairness opinion.

Based on these violations of federal law, Plaintiff voluntarily dismissed the state action on August 13, 2012 so that he could pursue the federal claims in federal court.  The next day, on August 14, 2012, Plaintiff filed his federal Class Action Complaint for Breach of Fiduciary Duties and

Violations of Federal Securities Laws (the "Complaint," cited herin as "¶__") in the United States District Court for the District of New Jersey.

That same day, Plaintiff's counsel opened dialogue with Defendants' counsel and requested that Defendants consent to narrowly tailored discovery on an expedited basis.

### B. Summary of the Claims in this Litigation

As the Complaint alleges, the Board failed to pursue an adequate sale process and adopted "deal protections" designed to favor TPG, while precluding competing proposals. ¶¶78-84. Indeed, although the Merger Agreement contains a 39-day "go- shop" provision, this "right" is rendered illusory because the Merger Agreement contains at least three preclusive deal provisions designed to protect the Proposed Transaction: First, following the short go-shop period, there is a "non-solicitation" provision, preventing Par Pharma from entertaining alternate proposals. ¶81. Second there is a "matching rights" provision, requiring Par Pharma to inform TPG about any unsolicited offer and to renegotiate the terms of the Proposed Transaction for three full business days thereafter. ¶83. And third, there is a termination fee provision, requiring Par Pharma to pay a fee of either $24 million or $48 million after the termination of the Proposed Transaction. ¶84.

Finally, the Complaint alleges that the Board failed to disclose material information in the Proxy about the Proposed Transaction relating to: (i) the process resulting in the Proposed Transaction; (ii) the analyses conducted by Par Pharma's financial advisor, JP Morgan; (iii) the nature of JP Morgan's prior services to or retentions by Par Pharma and TPG; and (iv) the Board's consideration, if any, of JP Morgan's conflicts of interests. In the absence of such information, shareholders cannot make an informed decision about whether to support the Proposed Transaction. ¶¶85-125.

### III. ARGUMENT

#### A. Legal Standard

Rule 26(d)(1) of the Federal Rules of Civil Procedure allows a court to modify the timing and sequence of discovery to expedite discovery. *See* Fed. R. Civ. P. 26(d)(1) (permitting discovery "by stipulation, or by court order"). In deciding whether to grant expedited discovery, courts have "generally employed one of two standards." *Better Packages*, 2006 WL 1373055, at *2.

The first and more accepted standard is "the reasonableness standard, which requires the party seeking the discovery to prove that the requests are reasonable under the circumstances." *Id.* (citations omitted). The other standard, which is less prevalent and more demanding, is the standard outlined in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), which is "very similar to a preliminary injunction analysis and looks more closely at the merits of the requests."[3] *Better Packages*, 2006 WL 1373055, at *2.

Because "'[a]n increasing majority of district courts' have rejected the rigid *Notaro* standard and adopted the more flexible 'good cause'/reasonableness analysis when considering expedited discovery requests," for this motion, leave to conduct expedited discovery should be governed by the reasonableness standard. *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-cv-465, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011) (quoting *St. Louis Group, Inc. v. Metals & Additives Corp.*, No. L-11-22, 2011 WL 1833460, at *2 (S.D. Tex. Apr. 26, 2011)); *see also Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) ("[M]any recent cases reject *Notaro* and apply a more

---

[3] "Under the *Notaro* standard the moving party must demonstrate '(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.'" *Better Packages*, 2006 WL 1373055, at *2 (quoting *Notaro*, 95 F.R.D. at 405).

flexible 'good cause' test.") (citations omitted).[4]  Indeed, in analyzing two cases that applied the *Notaro* standard, the *Better Packages* court pointed out that the *Notaro* standard is generally applied when a movant's motives are questionable and, further, noted how "neither matter involved a pending preliminary injunction hearing." *Better Packages*, 2006 WL 1373055, at *4.

    **B.**    **Plaintiff has Established Good Cause for an Order Expediting Discovery**

The "good cause"/reasonableness test "weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party." *Better Packages*, 2006 WL 1373055, at *3 (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).  "The factors considered include how far in advance of the formal start of discovery the request is made, whether the discovery are requests narrowly tailored, the purpose of the requested early discovery, whether the discovery burdens the defendants, and whether the defendants are able to respond to the requests in an expedited manner."  *Id.*  (citing *Semitool*, 208 F.R.D. at 276-78).

Here, Plaintiff's expedited discovery request is reasonable.  Although the request is made far in advance of the formal start of discovery, the requests are narrowly tailored and "appear[] reasonably necessary to enable this Court to judge the parties' interests and respective chances for success on the merits a preliminary injunction hearing."  *Nest Int'l*, 2012 WL 1584609, at *2 (finding "good cause to order at least some expedited discovery, as it appears reasonably necessary

---

[4]  *See also Digital Sin, Inc. v. Does 1-27*, No. 12 Civ. 3873 (JMF), 2012 U.S. Dist. LEXIS 78832, at *11 (S.D.N.Y. June 6, 2012) ("For the most part, courts in [the S.D.N.Y.] have applied a 'flexible standard of reasonableness and good cause' to determine whether expedited discovery is appropriate.") (quoting *Ayyash*, 233 F.R.D. at 326-37); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); *see also United States v. Erie County*, No. 09-CV-849S, 2010 U.S. Dist. LEXIS 144503, at *12-*13 n.5 (W.D.N.Y. Mar. 6, 2010) (the "weight of authority in [the Second C]ircuit rejects the *Notaro* analysis").

to enable this Court to judge the parties' interests and respective chances for success on the merits a preliminary injunction hearing"). Moreover, the burden on Defendants is minimal as the documents sought are most likely readily available and can be gathered and produced at minimal cost and in an expedited manner.

What is more, expedited discovery is necessary to allow Plaintiff to develop an adequate factual record in advance of his forthcoming motion to enjoin the Proposed Transaction, which is expected to close after a vote of Par Pharma shareholders – likely within the next three months. "[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Better Packages*, 2006 WL 1373055, at *3 (quoting *Phila. Newspaper Corp. v. Gannett Satellite Info. Network, Inc.*, No. 98-cv-27821, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998)). "Expedited discovery has been ordered where it would 'better enable the Court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing." *Id.* (quoting *Entm't Tech., Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003)). So too here, expedited discovery should be ordered due to the expedited nature of these proceedings and so that this Court can properly assess the merits of Plaintiff's forthcoming preliminary injunction motion.

Expedited discovery is also particularly appropriate in the context of shareholder class action litigation involving the proposed sale of a company, because the harm to shareholders is exacerbated by the impending nature of the shareholder vote and the swift close of the transaction – both of which are exclusively within the control of the defendants, who may perpetuate their breaches, and devise a coercive and preordained shareholder vote, if allowed to do so. Thus, even where there are "substantial post-transaction remedies, including an appraisal remedy," courts have recognized the propriety of limited expedited discovery in support of a motion to enjoin the transaction at issue. *See Ortsman v. Green*, C.A. No. 2670-N, 2007 Del. Ch. LEXIS 29, at *5-*6 (Del. Ch. Feb. 28, 2007)

("While it is true that there are substantial post-transaction remedies, including an appraisal remedy, the court concludes that the plaintiff is entitled to engage in limited expedited discovery and an opportunity to present a motion for a preliminary injunction.").

As shown below, expedited discovery is necessary under the circumstances of this case under *either* the good cause/reasonableness standard (which courts widely accept) *or* the four-part *Notaro* standard (which courts have criticized), because the Board failed to disclose material information, pursued an improper process, and unlawfully locked up the Proposed Transaction with deal protections. [5]

### 1.   The Board Failed to Disclose All Material Information to the Company's Unaffiliated Shareholders

Under Delaware law, which applies to the claims alleged here, a company's shareholders are entitled to the full and accurate disclosure of all material facts before making a voting decision on a significant corporate transaction. *See*, *e.g.*, *Shell Petroleum, Inc. v. Smith*, 606 A.2d 112, 114 (Del. 1992); *Stroud v. Grace*, 606 A.2d 75, 84-5 (Del. 1992). The "materiality standard is an objective one, measured from the point of view of the *reasonable investor*," not from "the subjective views of the directors[.]" *Zirn v. VLI Corp.*, 621 A.2d 773, 779 (Del. 1993) (emphasis in original). As such,

---

[5] While by no means controlling, the standard applicable to obtaining expedition in Delaware, whose substantive law applies, is instructive. "In deciding whether to expedite proceedings" there, a court "must determine 'whether in the circumstances the plaintiff has articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury . . . .'" *Police & Fire Ret. Sys. of City of Detroit v. Bernal*, C.A. No. 4663-CC, 2009 Del. Ch. LEXIS 111, at *5 (Del. Ch. June 26, 2009) ("*Bernal*") (citation omitted). In making this determination, a court ordinarily will not delve into the merits of the case. *See County of York Emps. Ret. Plan v. Merrill Lynch & Co.*, C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162, at *23 (Del. Ch. Oct. 28, 2008) ("*Merrill Lynch*"). "A party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely granted. Exceptions to that norm are rare." *In re Int'l Jensen Inc. S'holders Litig.*, C.A. No. 14992, 1996 Del. Ch. LEXIS 77, at *1-*2 (Del. Ch. July 16, 1996).

"a material omission is not rendered immaterial simply because the party making the omission honestly believes it [is] insignificant." *Id*. Rather, an omitted fact is deemed material when it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Rosenblatt v. Getty Oil Co*., 493 A.2d 929, 944 (Del. 1985) (citing *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)). Thus, "'it need not be shown that an omission or distortion would have made an investor change his overall view of a proposed transaction . . . .'" *Zirn*, 621 A.2d at 779 (quoting *Barkan v. Amsted Indus., Inc*., 567 A.2d 1279, 1289 (Del. 1989)).

Moreover, "[w]hen a document ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts." *In re Pure Resources, Inc. S'holders Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002); *see also Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1280 (Del. 1994) (partial disclosure of historical events leading up to merger triggered duty to disclose). "[D]irectors must also avoid making materially misleading disclosures, which tell a distorted rendition of events or obscure material facts." *In re Topps Co. S'holders Litig.*, 926 A.2d 58, 64 (Del. Ch. 2007) (citing *Arnold*, 650 A.2d at 1277). Rather, the directors must ensure that filings related to a proposed transaction "'provide a balanced, truthful account of all matters' they disclose." *Pure*, 808 A.2d at 448 (quoting *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998)).

Here, the Complaint alleges that Par Pharma's Board failed to disclose all material information in the Proxy concerning: (i) the process resulting in the Proposed Transaction; (ii) the analyses conducted by Par Pharma's financial advisor, JP Morgan; (iii) the nature of JP Morgan's prior services to or retentions by Par Pharma and TPG; and (iv) the Board's consideration, if any, of JP Morgan's conflicts of interests.

      **a.**      **The Proxy Fails to Disclose Information Concerning JP Morgan's Financial Analyses and Conflict of Interests**

The Proxy fails to disclose material information concerning JP Morgan analyses, including pricing multiples used in certain analyses underlying JP Morgan's fairness opinion. The Proxy further fails to disclose material information concerning JP Morgan's financial analyses and the terms of its engagement, which also warrants expedited discovery. Specifically, the Proxy does not disclose material information concerning the assumptions and inputs that JP Morgan utilized, nor does it disclose details concerning JP Morgan's prior work for TPG and the Company and JP Morgan's conflict of interests.

      **(1)**      **JP Morgan's Analyses**

"[T]he fairness of the consideration offered in a merger . . . is material to a shareholder considering whether to vote in favor of the transaction." *Gilmartin v. Adobe Resources Corp.*, No. 12467, 1992 Del. Ch. LEXIS 80, at *31 (Del. Ch. Apr. 6, 1992) (citations omitted). "After all, the key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company." *In re PNB Holding Co. S'holders Litig.*, C.A. No. 28-N, 2006 Del. Ch. LEXIS 158, at *58 (Del. Ch. Aug. 18, 2006) (citation omitted). Yet, as the Complaint alleges, the Proxy fails to disclose key items of information concerning JP Morgan's financial analyses, including the inputs, assumptions and multiples that JP Morgan considered, utilized and developed. The lack of disclosure of this information raises a colorable claim that the Proxy is incomplete and warrants expedited discovery, as a result.[6]

---

[6] *See* ¶¶117-124 (detailed summary of inputs, assumptions, and multiples omitted from the Proxy, including the bases for materiality of each).

### (2) JP Morgan's Conflict of Interests

As the Complaint alleges, although the Proxy discloses JP Morgan had extensive business dealings with TPG in the two years preceding the date of its opinion, the Proxy fails to include any discussion of whether and how the Board considered JP Morgan's apparent conflict of interests. In the two years preceding its opinion, JP Morgan was paid approximately $143 million in fees by TPG and its affiliates. Because JP Morgan earned such large fees from TPG, there exists a glaring conflict. Although, JP Morgan was hired to provide an unbiased fairness opinion, the incentive to appease TPG is too obvious to ignore. Yet, the Proxy is silent as to issues including, but not limited to, the following:

- Did the Board know of and consider this conflict?

- If the Board knew of the existence and scope of JP Morgan's relationship with TPG, why did the Board choose JP Morgan to act as the Company's financial advisor when JP Morgan had such a substantial, glaring conflict of interests?

- What was the independent directors' and the Steering Committee's bases for not retaining another, unconflicted financial advisor?

- Did the Board inquire as to whether JP Morgan had any pre-existing relationship with Party A?

Although "it is imperative for the stockholders to be able to understand what factors might influence the financial advisor's analytical efforts," *David P. Simonetti Rollover IRA v. Margolis*, C.A. No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *25 (Del. Ch. Jun. 27, 2008), the Proxy raises more questions than it answers. Defendants have a duty to disclose more detail concerning the Company's conflicted advisor and the Board's decision as to its selection of JP Morgan.[7] "Because of the central role played by investment banks in the evaluation, exploration, selection, and

---

[7] *See* ¶¶86-89, 94 (detailed summary of issues related to JP Morgan's conflict of interests omitted from the Proxy, including the bases of materiality of each).

implementation of strategic alternatives . . . [courts] ha[ve] required full disclosure of investment banker compensation and potential conflicts." *In re Del Monte Foods Co. S'holders Liti*g., 25 A.3d 813, 832 (Del. Ch. 2011) (collecting cases). Thus, facts underlying actual or potential conflicts of interest afflicting JP Morgan are indisputably material to shareholders, who must decide what level of credibility to ascribe to the advisor's financial analyses and fairness opinion on which their own determination of the fairness of the Proposed Transaction consideration is based. *See In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *55-*56 (Del. Ch. Oct. 2, 2009). And, owing to the inherently material nature of conflicts involving a board's advisor, these facts are material – and thus justify expedited discovery – regardless of whether any conflict influenced JP Morgan. *See id.* at *56 ("There is no rule . . . that conflicts of interest must be disclosed only where there is evidence that the financial advisor's opinion was actually affected by the conflict.").

        b.        **The Proxy Fails to Disclose Information Concerning the Flawed Process Utilized by the Board in Selling the Company**

In addition to material misstatements and omissions concerning JP Morgan, the Proxy also contains misstatements and omissions about the process that the Board utilized to sell the Company and negotiate with TPG. For example, the Proxy does not disclose whether the Board, at its March 30, 2012 meeting considered any other alternatives other than selling the Company or pursuing a standalone business plan. ¶90. The Proxy also fails to provide sufficient information about potential acquirers. More specifically, the Proxy does not disclose how many of the acquirers were strategic. ¶92. Nor does the Proxy explain why the Board concluded that some acquirers "might not be interested." ¶93. This type of information is material because the Board has a duty to secure the best price available for the Company and to conduct a suitable market check. Shareholders are entitled to be informed before they are asked to vote on the Proposed Transaction, especially in light of the

excessive termination fee, which along with other preclusive deal protection measures, nullifies the benefit of any "go-shop" opportunity to conduct a post-signing market check.[8]

### 2. The Board Failed to Pursue a Proper Process and Locked Up the Proposed Transaction with Unreasonable Deal Protections

A core contention of the Complaint is that the Board failed to pursue a process designed to maximize the value of the Company's shares in contravention of *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986), and its progeny – a fiduciary duty that the Board must faithfully discharge over and above any competing interests, duties or allegiances, in brokering a transaction that, like the Proposed Transaction, would effectuate a change in control. Indeed, as the Complaint alleges, the Board abruptly sought to sell Par Pharma, after the Company's largest shareholder urged a sale to a strategic partner and threatened to take action.

Moreover, once the Board decided to sell the Company to TPG, it locked up the deal with various deal protection provisions designed to preclude superior offers. These protections are unreasonable in relation to the perceived threat posed by a competing transaction and could compel shareholders to approve the Proposed Transaction when they otherwise might not. *See Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985); *see also Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 935 (Del. 2003) ("If defensive measures are either preclusive or coercive they are draconian and impermissible" under *Unocal*); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 71 (Del. 1995) ("Enhanced judicial scrutiny under *Unocal* applies 'whenever the record reflects that a board of directors took defensive measures in response to a perceived threat to corporate

---

[8] *See* ¶¶90-93, 95-116 (detailed summary of issues related to the inadequate process utilized by the Board in selling the Company that were omitted from the Proxy, including the bases for materiality of each).

- 13 -

policy and effectiveness which touches upon issues of control.'") (quoting *In re Unitrin, Inc.*, 651 A.2d 1361, 1372 n.9 (Del. 1995)).

Thus, although courts may have upheld certain of these protections in other circumstances, the Board's use of these measures collectively, and in context here, gives rise to a colorable breach of fiduciary duty claim. *See Bernal*, 2009 Del. Ch. LEXIS 111, at *5 (colorable claim based on deal protections justified expedited discovery); *Merrill Lynch*, 2008 Del. Ch. LEXIS 162, at *25-*26 (finding that the use of "deal protection devices" has "been approved in other Delaware cases" raised a colorable claim requiring expedited discovery, because "deal protection devices must be viewed in the overall context; checking them off in isolation is not the proper methodology").

### 3. Plaintiff and Par Pharma's Other Public Shareholders Will Suffer Irreparable Harm in the Absence of the Requested Relief

In the absence of the requested relief, Par Pharma shareholders will be forced to decide whether to approve the Proposed Transaction without the benefit of all material information or a level playing field for other potential bidders. "[I]rreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information." *Pure*, 808 A.2d at 452 (citing cases). Moreover, the deal protections "are currently having an adverse impact on [Par Pharma's] shareholders by deterring potential bidders . . . Harm resulting from such deterrence is incalculable." *See Bernal*, 2009 Del. Ch. LEXIS 111, at *6.

Consequently, "[t]he opportunity for a shareholder vote sometime in the future . . . does not address the alleged current deterrent effect of the deal protection measures." *Id.* Furthermore, "it would be impossible to 'unscramble the eggs' by attempting to unwind the merger once it has been completed." *Id.* "Thus, in cases such as this one, the shareholders' only realistic remedy for certain breaches of fiduciary duty in connection with a sale of control transaction may be

injunctive relief" – which magnifies the need for expedited discovery in anticipation of Plaintiff's forthcoming motion to enjoin the Proposed Transaction. *Id.* at *7 (expediting proceedings).

That principle applies directly here, especially in light of the preclusive deal protection measures. Although the Merger Agreement provides for a "go-shop" period, the effect of the deal protection provisions renders the go-shop period illusory. The Merger Agreement requires the Company to provide TPG with ***advance notice*** before providing any competing bidder with any confidential information, even if the Board has determined that the competing bid is reasonably likely to lead to a superior proposal. Additionally, the Merger Agreement requires the Company to provide TPG with confidential, non-public information about competing proposals, which TPG can then use to formulate a matching bid. Such a provision is especially preclusive given TPG's right to match any competing bid. Above all, the Merger Agreement requires that the Company pay a termination fee of $48 million if the Proposed Transaction is terminated in favor of a superior proposal made during the no-shop period. Thus, potential bidders are strongly deterred by these provisions from making a competing offer despite any go-shop provision. At a minimum, if a bidder were to make a superior proposal during the go-shop period, that bidder will be required to pay a $24 million termination fee effectively raising the price of Par Pharma by $0.60 per share.

### C.     The Discovery that Plaintiff Seeks Is Reasonable in Nature and Scope

The discovery that Plaintiff seeks is reasonable in nature and scope. Specifically, Plaintiff seeks the following discovery:

**Documents:**

1. Minutes of meetings of and presentation materials presented to Par Pharma's Board of Directors or any other committee/subcommittee of the Board (e.g., presentation materials and analyses prepared by JP Morgan or any other financial advisor in connection with Par Pharma's evaluation of strategic alternatives, including the final presentation materials underlying JP Morgan's fairness opinion on the merger);

2. Documents contained by or on behalf of Par Pharma in the "data room" (as referenced in the Proxy);

3. Documents and communications exchanged between Par Pharma, or anyone on its behalf (e.g., JP Morgan) and any prospective buyers regarding a potential sale, merger, or any other strategic transaction;

4. Monthly and quarterly executive and/or director packages or any other document containing Par Pharma's historical or projected operations and financial performance, internal business plans, financial projections and other estimates of Par Pharma's financial performance, and valuations of the Company's assets (including the internal estimates prepared by Par Pharma management that JP Morgan used in rendering any financial analyses); and

5. Documents sufficient to disclose the nature, scope, and terms of TPG's engagement of JP Morgan, during the past five years (including documents sufficient to disclose the work performed by and the compensation paid, or payable, to JP Morgan).

**Depositions:**

6. Par Pharma executive(s) most knowledgeable about the negotiations with TPG with regard to the Proposed Transaction, any other strategic alternative available to the Company, including the value of the Company in connection with the strategic alternatives (e.g., CEO LePore);

7. JP Morgan representative(s) most knowledgeable about the negotiations between Par Pharma and TPG and the valuation of Par Pharma; and

8. TPG executive(s) most knowledgeable about the negotiations with Par Pharma with regard to both the Proposed Transaction and the valuation of the Company.

9. Par Pharma independent director(s) most knowledgeable about the negotiations with TPG with regard to the Proposed Transaction, any other strategic alternative available to the Company, including the value of the Company in connection with the strategic alternatives.

10. A member of the Steering committee, which oversaw the bidding process.

**Custodian Emails:**

11. Targeted email searches of custodian(s) to be deposed from Par Pharma regarding: (1) the evaluation or analysis of the a potential sale, merger, or other strategic transaction with any prospective buyers, including TPG; and (2) the engagement of JP Morgan as Par Pharma's financial advisor.

12. Targeted email searches of custodian(s) to be deposed from JP Morgan regarding (1) Par Pharma's internal business plans, financial projections, and any other estimates used as assumptions and inputs by JP Morgan in rendering its financial analysis of the Proposed Transaction or any other strategic alternative; and (2) JP Morgan's business relationship, including work performed for and compensation received from TPG in the previous five years.

These requests are narrowly tailored for the purposes of an expedited preliminary injunction proceeding. Indeed, the limited categories of documents requested are narrowly tailored to only the most relevant issues implicated by the Proxy and Plaintiff's claims. Moreover, many of the documents sought are likely to already be within the possession of defense counsel and therefore are easily produced. These include Company disclosure schedules (incorporated by reference in the Merger Agreement, but not made publicly available), Board meeting minutes and other materials, Par Pharma's business plans, and presentations prepared by JP Morgan in rendering its fairness opinion. Further, Plaintiff seeks only to depose the key individuals involved in the negotiations, from Par Pharma, TPG, and non-party JP Morgan. In these circumstances, Defendants cannot credibly contest the reasonableness of the discovery sought, nor claim that it would be burdensome for them to provide – particularly because they are responsible for establishing the schedule pursuant to which the shareholder vote and close of the Proposed Transaction (if the vote is favorable) are expected to take place.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to grant his motion for expedited discovery, together with such other and further relief as the Court deems just and proper.[9]

---

[9] As discovery in this matter may involve the disclosure of confidential information, Plaintiff is agreeable to the entry of a confidentiality order such as the local form Discovery Confidentiality Order. *See* Appendix S of the Local Civil & Criminal Rules of the United States District Court for the District of New Jersey, *located at* http://www.njd.uscourts.gov/LocalRules.html.

| | |
|---|---|
| DATED:  August 15, 2012 | PASHMAN STEIN, P.C.<br>MICHAEL S. STEIN<br>JOHN T. WHIPPLE<br>SEAN MACK<br><br>_____/s/_____<br>SEAN MACK<br><br>Court Plaza South<br>21 Main Street, Suite 100<br>Hackensack, NJ  07601<br>Telephone:  201/488-8200<br>201/488-5556 (fax)<br><br>ROBBINS GELLER RUDMAN<br>   & DOWD LLP<br>MARK S. REICH<br>CHRISTOPHER M. BARRETT<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>Telephone:  631/367-7100<br>631/367-1173 (fax)<br><br><br>ROBBINS GELLER RUDMAN<br>   & DOWD LLP<br>RANDALL J. BARON<br>DAVID T. WISSBROECKER<br>EDWARD M. GERGOSIAN<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br><br><br>GOLDFARB LLP<br>HAMILTON LINDLEY<br>2501 N. Harwood Street, Suite 1801<br>Dallas, TX 75201<br>Telephone:  214/583-2233<br>214/583-2234 (fax)<br><br>*Attorneys for Plaintiff* |