# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ROBERT DUVALL, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

PAR PHARMACEUTICAL COMPANIES, INC., PETER S. KNIGHT, PATRICK G. LEPORE, RONALD M. NORDMANN, THOMAS P. RICE, MELVIN SHAROKY, JOSEPH E. SMITH, PATRICK J. ZENNER, TPG CAPITAL, L.P., SKY GROWTH HOLDINGS CORPORATION, and SKY GROWTH ACQUISITION CORPORATION,

Defendants

Civil Action No. 12-5109    (SRC-CLW)

Honorable Stanley R. Chesler

Motion Return Date:

September 17, 2012, or such earlier   date as may be set by the Court

(Oral Argument Requested)

*Document Electronically Filed*

---

# BRIEF ON BEHALF OF ALL DEFENDANTS IN OPPOSITION TO PLAINTIFF'S MOTION BY ORDER TO SHOW CAUSE FOR EXPEDITED DISCOVERY

---

Adam M. Saltzman
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

*Attorneys for TPG Capital, L.P., Sky Growth Holdings Corporation and Sky Growth Acquisition Corporation*

Jeffrey J. Greenbaum
Scott Murray
Andrew W. Schwartz
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102-5400
Telephone:  (973) 643-7000
jgreenbaum@sillscummis.com
smurray@sillscummis.com
aschwartz@sillscummis.com

*Counsel for Defendants*
*Peter S. Knight, Ronald M. Nordmann,*
*Thomas P. Rice, Melvin Sharoky, Joseph E.*
*Smith, Patrick J. Zenner, Par Pharmaceutical*
*Companies, Inc. and Patrick G. LePore*

(Additional Counsel Listed on Signature Page)

# TABLE OF CONTENTS

**Page(s)**

**Preliminary Statement**.................................................................................1

**Statement of Facts and Procedural History** .......................................3

**Argument** .....................................................................................................10

I.      **Plaintiff's Motion Must Be Denied Because the PSLRA's Automatic Stay Applies.**...............................................................10

        A.    Defendants Intend to Move to Dismiss Plaintiff's Claims. ...............10

        B.    The PSLRA's Automatic Stay Applies.............................................10

        C.    The Stay Applies to Plaintiff's State Law Claims Along With His Federal Securities Claims. ........................................................13

        D.    Plaintiff Cannot Demonstrate an Exception to the PSLRA's Automatic Stay. ...............................................................................16

II.     **Movant Is Not Entitled To Expedited Discovery.**....................................21

        A.    Movant's Request for Expedited Discovery Is Unreasonable. ...........21

**CONCLUSION**.............................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Gen. Corp. v. Tex. Air. Corp., 1987 WL 6337 (Del. Ch.
 Feb. 5, 1987) ...................................................................................................19

Barbieri v. Wells Fargo & Co., C.A. No. 09-3196, 2012 WL 3089373
 (E.D. Pa. July 27, 2012)...............................................................................21

Benbow v. Aspen Tech., Inc., No. Civ. A. 02-2881, 2003 WL 1873910
 (E.D. La. Apr. 11, 2003) ...........................................................................14, 15

Better Packages, Inc. v. Zheng, No. Civ. A. 05-4477,
 2006 WL 1373055 (D.N.J. May 17, 2006)............................................22, 23, 24

Botton v. Ness Techs. Inc., et al.
 No. 11-3950, 2011 WL 3438705 (D.N.J. Aug. 4, 2011)............................passim

Davis v. Duncan Energy Partners L.P., 801 F. Supp. 2d 589
 (S.D. Tex. 2011)........................................................................................11, 18

Dimension Data N. Am., Inc. v. Netstar-1, Inc., 226 F.R.D. 528
 (E.D.N.C. 2005) .........................................................................................22, 26

Dipple v. Odell, C.A. No. 12-1415, 2012 WL 1548950
 (E.D. Pa. May 2, 2012) ...............................................................................15, 18

Entm't Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546,
 2003 WL 22519440 (E.D. Pa. Oct. 2, 2003) .....................................................22

Fisher v. Kanas, No. 06-CV-1187, 2006 WL 2239038
 (E.D.N.Y. Aug. 4, 2006)..............................................................................11, 12

Gardner v. Major Auto. Cos., No. 11-CV-1664, 2012 WL 1230135
 (E.D.N.Y. Apr. 12, 2012) ............................................................................13, 15

In re Adelphia Commc'ns Secs. Litig., No. 02-1781, 2003 WL 22358819
 (E.D. Pa. May 13, 2003) ...................................................................................20

In re Altera Corp. Derivative Litig., No. C 06-03447, 2006 WL 2917578
 (N.D. Cal. Oct. 11, 2006)...................................................................................14

In re Am. Funds Sec. Litig., 493 F. Supp. 2d 1103 (C.D. Cal. 2007) ....................12

In re Carnegie Int'l Corp. Sec. Litig., 107 F. Supp. 2d 676
    (D. Md. 2000) ...............................................................................13

In re Countrywide Fin. Corp. Derivative Litig.
    542 F. Supp. 2d 1160 (C.D. Cal. 2008) ...............................................11

In re Cree, Inc. Sec. Litig., 220 F.R.D. 443 (M.D.N.C. 2004) ...............................10

In re DPL Inc., Sec. Litig., 247 F. Supp. 2d 946 (S.D. Ohio 2003) .......................12

In re Heckmann Corp. Sec. Litig., No. 10-378-LPS-MPT,
    2010 WL 5887794 (D. Del. Feb. 28, 2010)..................................10, 17

In re Initial Pub. Offering Sec. Litig., 236 F. Supp. 2d 286
    (S.D.N.Y. 2002) ...........................................................................18

In re NAHC, Inc. Sec. Litig., 306 F.3d 1314 (3d Cir. 2002)...................................10

In re Par Pharm. Sec. Litig., 2009 WL 3234273
    (D.N.J. Sept. 30, 2009) ...................................................................16

In re Smith Barney Transfer Agent Litig., No. 05 Civ 7583,
    2006 WL 1738078 (S.D.N.Y. June 26, 2006) ....................................13

In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583,
    2012 WL 1438241 (S.D.N.Y. Apr. 25, 2012) ....................................16

In re Trump Hotel S'holder Derivative Litig., No. 96 Civ 7820,
    1997 WL 442135 (S.D.N.Y. Aug. 5, 1997)...................................11, 14

In re UnitedHealth Grp. Inc. PSLRA Litig., 643 F. Supp. 2d 1094
    (D. Minn. 2009) .............................................................................11

Irish Lesbian & Gay Org. v. Giuliani, 918 F. Supp. 728
    (S.D.N.Y. 1996)............................................................................22

Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717
    (S.D. Cal. 1996) ............................................................................12

Newby v. Enron Corp., 188 F. Supp. 2d 684 (S.D. Tex. 2002) ............................12

Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.,
    No. Civ. A. 98-CV-2782, 1998 WL 404820 (E.D. Pa.
    July 15, 1998)..................................................................................21, 22, 26

Sarantakis v. Gruttadauria
    No. 02 C 1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ............................15

Sedona Corp. v. Ladenburg Thalmann, No. 03 Civ 3120,
    2005 WL 2647945 (S.D.N.Y. Oct. 14, 2005)......................................................12

Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162
    (S.D.N.Y. 2001) ....................................................................................................15

Winer Family Trust v. Queen, C.A. No. 03-4318,
    2004 WL 350181 .............................................................................................13, 16

**Statutes & Rules**

8 Del. C. § 262 ............................................................................................................19

15 U.S.C. § 78u-4(b)(3)(B)................................................................................10, 16, 17

Defendants Patrick G. Lepore, Par Pharmaceutical Companies, Inc. ("Par" or the "Company"), TPG, Capital L.P., Sky Growth Holdings Corporation and Sky Growth Acquisition Corporation (collectively, "TPG"), and Peter S. Knight, Ronald M. Nordmann, Thomas P. Rice, Melvin Sharoky, Joseph E. Smith and Patrick J. Zenner (collectively, the "Independent Directors"), respectfully submit this Memorandum of Law in Opposition to Plaintiff Duvall's Motion by Order to Show Cause for Expedited Discovery.

## **Preliminary Statement**

On July 16, 2012, Par announced that it had entered into an agreement to be acquired by affiliates of TPG (the "Merger") for approximately $2 billion in cash.  Since Par's announcement of the Merger, plaintiffs seeking to represent a class consisting of Par public shareholders[1] ("Plaintiffs") have filed a number of actions against Defendants seeking to block the Merger.[2]  Plaintiffs filed the first such action in the Delaware Court of Chancery on July 24, 2012.  Plaintiffs filed additional suits in the Delaware Court of Chancery, which have all since been consolidated (the consolidated action is referred to herein as the "Delaware Action").  Plaintiffs first brought suit in New Jersey state court on July 26, 2012,

---

[1] Defendants do not oppose the certification of a class in these actions, but Defendants vigorously object to the sufficiency and validity of Plaintiffs' claims.

[2] Incredibly, only one of these actions is mentioned in Plaintiff Duvall's August 15, 2012 Mem. of Law in Support of Pl.'s Mot. by Order to Show Cause for Expedited Disc., Aug. 17, 2012, ECF No. 8 ("Pl.'s Br.").

and Plaintiff Duvall ("Plaintiff" or "Movant") brought a putative class action to enjoin the merger in New Jersey state court on July 30, 2012. Just days ago, on August 13, 2012, Plaintiff Duvall voluntarily dismissed his action in New Jersey state court and brought this action (the "Federal Action") on August 14, 2012.

Both the Delaware and Federal Actions seek to block the Proposed Merger based on alleged breaches of fiduciary duties (including allegedly deficient disclosures) by Patrick LePore and Par's Independent Directors, as well as on TPG's alleged aiding and abetting of these supposed breaches. In addition, Plaintiff Duvall asserts duplicative disclosure claims under Delaware fiduciary duty and federal securities law. Both Plaintiff Duvall and the plaintiffs in the Delaware Action have indicated their intent to file a motion for a preliminary injunction blocking the Proposed Merger.[3]

Plaintiff Duvall now seeks unreasonably broad expedited discovery in support of that promised motion for a preliminary injunction. The Court must deny this request on two bases.

First, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Defendants' intent to file a motion to dismiss the Federal Action stays all discovery pending the Court's determination of this forthcoming motion.

---

[3] Defendants are filing concurrently with this brief a Motion to Proceed in One Jurisdiction.

Plaintiff Duvall cannot demonstrate that an exception to this automatic stay applies because there is no exceptional need to preserve evidence and no undue prejudice that will result if the automatic stay is maintained.  Indeed, the parallel actions pending in the Delaware Court of Chancery and New Jersey state court, where the PSLRA stay is not applicable, obviate the need for expedited discovery in this action.

Second, apart from the PSLRA's automatic stay, Plaintiff Duvall's request for expedited discovery is not narrowly-tailored to the issues at stake.  The Federal Rules of Civil Procedure do not provide for expedited discovery, and Plaintiff can only obtain such extraordinary relief if the Court determines that his request is reasonable.  The documents and depositions Plaintiff seeks are not limited to the time period or subject matter at issue, and are thus facially unreasonable.  The breadth of the requests and the burden that would result from this discovery are beyond the scope that courts have permitted.

## Statement of Facts and Procedural History

On July 16, 2012, Par announced that it had entered into a merger agreement dated July 14, 2012, with TPG (the "Merger Agreement").  Pursuant to the Merger Agreement, Par stockholders will receive $50.00 in cash per share in exchange for their shares of Par common stock, representing a 37% premium over the stock's closing price on July 13, 2012, the last full trading day before the

announcement of the Merger Agreement, and a 45% premium over the average closing price of the stock during the month prior to July 13, 2012. The $50.00 per share price represents a valuation of the Company at a multiple of 8.4 times its earnings before interest, taxes, depreciation, and amortization ("EBITDA") for the period from July 1, 2011 through June 30, 2012.

The all-cash Merger is the result of an extensive and deliberate process directed by Par's Independent Directors (all members of the Par Board of Directors other than Patrick LePore, Par's CEO, are independent), with the assistance of outside counsel, after an assessment of Par's long-term strategic position and an evaluation of potential transactions, which included consultation with financial and legal advisors. The independent directors took steps to design and implement a process to ensure the best price reasonably available to Par's shareholders, including holding executive sessions of the Board (with no members of management present) where key decisions were made, and prohibiting discussions between management and potential acquirers about employment and compensation following any closing without prior Board approval.

In exploring possible strategic and financial options, the Board engaged J.P. Morgan to lead a search for a potential buyer based on J.P. Morgan's expertise in the health care industry. J.P. Morgan contacted three strategic and two financial potential acquirers, including TPG, who were selected based on a careful

consideration of who would have the financial ability to consummate a potential

transaction that would yield the highest value to the Par shareholders.  At the time

Par engaged J.P. Morgan, J.P. Morgan disclosed, and the Independent Directors

considered, J.P. Morgan's prior relationship with and fees from TPG and the other

financial potential acquirer.  J.P. Morgan also agreed at the outset of its

engagement not to finance an acquisition of the Company.  TPG's bid of $50.00

per share exceeded the highest bid from any of the other strategic and financial

potential acquirers.  Under the direction of the independent directors and outside

counsel, Par and TPG exchanged several drafts of the Merger Agreement over the

course of negotiations, during which the Board of Directors pushed for key terms

favorable to its shareholders.

These terms include the Merger Agreement's provision of a "go-shop

period" commencing on the date of the Merger Agreement through August 24,

2012.  During the go-shop period, Par can initiate, solicit and encourage

acquisition proposals from third parties.  In addition, after the conclusion of the go-

shop period, the Company can continue discussions with parties from which it

received superior or potentially superior acquisition proposals during the go-shop

period.  If Par accepts a superior proposal and the Merger Agreement is terminated,

the termination fee payable to TPG is, in all circumstances, less than 3% of the

proposed merger value.  Par shareholders also have statutory appraisal rights under

the Delaware General Corporation Law, which allows them, subject to certain

statutory requirements, to seek appraisal of the fair value of their shares by the

Delaware Court of Chancery.

Par's Board of Directors unanimously approved the Merger, and the

Company filed a Preliminary Proxy Statement Pursuant to Section 14(a) of the

Securities Exchange Act (the "Proxy"), (attached as Exhibit G to the Certification

of Sandra C. Goldstein in Support of Defendants' Opposition to Plaintiffs' Motion

by Order to Show Cause for Expedited Discovery and Defendants' Motion to

Proceed in One Jurisdiction (hereinafter "Goldstein Cert. Ex. __")), with the

Securities and Exchange Commission ("SEC") on August 2, 2012.  The Proxy

disclosed all material terms and considerations relating to the Merger, including,

but not limited to, the factors described above, and was not reviewed by the SEC.

A shareholder vote on the Merger Agreement is expected to take place, at the

earliest, at the end of September.

Following Par's announcement of the proposed Merger, six

shareholder class-action complaints challenging the Merger have been confirmed

to be filed: four in Delaware and two in New Jersey.  The first suit was filed in the

Delaware Court of Chancery on July 24, 2012.  Nadoff v. Par Pharm. Cos., Inc.,

C.A. No. 7715-VCP (Del. Ch.).  Two days later, on July 26, 2012, two additional

suits were filed, one in Delaware and one in New Jersey.  KBC Asset Mgmt. N.V.

v. Par Pharm. Cos., Inc., C.A. No. 7725-VCP (Del. Ch.); Wilkinson v. LePore, No.

C-229-12 (N.J. Super. Ct. Ch. Div.) (Goldstein Cert. Ex. D).   On July 30, 2012,

another two actions were filed, one in each of the jurisdictions.  Greenberg v.

Knight, C.A. No. 7734-VCP (Del. Ch.); Duvall v. Par Pharm. Cos., Inc., No. C-

226-12 (N.J. Super. Ct. Ch. Div.) (Goldstein Cert. Ex. E).  On August 1, 2012,

shareholders brought a fourth suit in Delaware.  Police & Fire Ret. Sys. of the City

of Detroit v. Par Pharm. Cos., Inc., C.A. No. 7740-VCP (Del. Ch.).

On August 2, 2012, Vice Chancellor Parsons of the Delaware Court of

Chancery granted a motion to consolidate the Nadoff and KBC Asset Management

actions, creating the consolidated docket In re Par Pharm. Cos., Inc. Shareholders

Litig., C.A. No. 7715-VCP (Del. Ch.) (the "Delaware Action").  (See Vice

Chancellor Parsons' Aug. 2, 2012 Order of Consolidation and Appointment of

Lead and Liaison Counsel, Goldstein Cert. Ex. B.)  On August 13, 2012, Plaintiffs

in the other two Delaware actions, Police & Fire Ret. Sys. and Greenberg, sought

leave to join the consolidated action, which the Court granted on August 14, 2012.

(See Vice Chancellor Parsons' Aug. 14, 2012 Am. Order of Consolidation and

Organization of Pls.' Counsel, Goldstein Cert. Ex. C.)  The Plaintiffs in the

Delaware Action have filed a Verified Amended Consolidated Class Action

Complaint ("Del. Compl."), attached at Goldstein Cert. Ex. A.

The parties in the Delaware Action have exchanged a proposed confidentiality stipulation and order as well as a proposed expedited scheduling order, which they plan to submit to the Delaware Court of Chancery promptly in order to commence document production and other discovery.

On August 13, 2012, Plaintiff Duvall voluntarily dismissed his New Jersey state court action and, on August 14, filed the Federal Action, invoking federal question jurisdiction by adding two duplicative claims under the Securities Exchange Act of 1934 (the "Exchange Act").  (See Plaintiff Duvall's Aug. 13, 2012 Ltr. to the Sup. Ct. of New Jersey, Goldstein Cert. Ex. F; Duvall v. Par Pharm. Cos. Inc., No. 2:12-cv-05109-SRC-CLW (D.N.J. Aug. 14, 2012) (Pl.'s Class Action Compl. for Breach of Fiduciary Duties and Violations of the Fed. Sec. Laws ("Fed. Compl."), Aug. 14, 2012, ECF No. 1.).

This action and the Delaware Action allege substantively identical claims based on the allegedly insufficient process Par's Board engaged in to evaluate the Proposed Transaction, and purported omissions and misrepresentations in the Proxy.  Both actions are brought on behalf of identical nationwide putative classes of Par shareholders.  (Del. Compl. ¶ 32; Fed. Compl. ¶ 31.)  Both are brought against the same parties.  (Del. Compl. ¶¶ 18-31; Fed. Compl.  ¶¶ 17-25, 27-30.)  Both seek injunctions preventing the Merger.  (Del. Compl. at 37; Fed. Compl. at 45.)  And both are based on the same allegations

related to supposedly impermissible "deal protections", (Del. Compl. ¶¶ 91-92;

Fed. Compl. ¶¶ 6, 78-84), the role of the Board's financial advisor, (Del. Compl. ¶¶

89-90; Fed. Compl. ¶¶ 56-63), the future value of Par (Del. Compl. ¶¶ 44-65; Fed.

Compl. ¶¶ 64-77), and the sufficiency of the Proxy, (Del. Compl. ¶¶ 97-112; Fed.

Compl. ¶¶ 85-125).

Both this action and the Delaware Action assert claims for breach of

fiduciary duty and aiding and abetting breach of fiduciary duty.  (Del. Compl.

¶¶ 113-126; Fed. Compl. ¶¶ 129-139.)  Although the complaint in this action

brings additional claims under the federal securities laws, these claims are

duplicative because they are based on the same alleged disclosure issues regarding

the Proxy that underlie Plaintiff's state law claims.  (See Fed. Compl. ¶¶ 129-

139;140-155.)

Plaintiff Duvall now moves by way of order to show cause for

expedited discovery.  As discussed below, because of the PSLRA's automatic stay

as well as the overbreadth of Plaintiff's discovery requests, Plaintiff's motion must

be denied.

## Argument

I.  **PLAINTIFF'S MOTION MUST BE DENIED BECAUSE THE PSLRA'S AUTOMATIC STAY APPLIES.**

A.  Defendants Intend to Move to Dismiss Plaintiff's Claims.

Defendants intend to make a timely motion to dismiss the disclosure claims that Plaintiff Duvall has re-packaged as alleged violations of the Exchange Act in an effort to invoke this Court's jurisdiction.  (See Fed. Compl. ¶¶ 129-139, 140-155;  Goldstein Cert., at ¶ 9.)  Defendants will also move to dismiss the remainder of Plaintiff's claims.  The transaction at issue in this case was guided by an independent steering committee and resulted in a process that achieved a fair price, and a substantial premium for Par shareholders.  The allegedly illegal "deal protections" used in this transaction are actually run-of-the-mill provisions common in merger agreements.  Further, the Proxy fully discloses all material information regarding the transaction.

B.  The PSLRA's Automatic Stay Applies.

The PSLRA provides for an automatic stay "during the pendency of any motion to dismiss".  15 U.S.C. § 78u-4(b)(3)(B).[4]  Congress adopted this provision in an effort to "protect innocent defendants from having to pay nuisance

---

[4] This stay is applicable to nonparties as well.  See, e.g., In re Cree, Inc. Sec. Litig., 220 F.R.D. 443, 446 (M.D.N.C. 2004) ("[I]n securities fraud lawsuits governed by the PSLRA, all discovery is stayed against parties and non-parties alike until the court has addressed the sufficiency of the complaint.").

settlements in securities fraud actions in which a foundation for the suit cannot be

pleaded" and "'to provide a filter at the earliest stage (the pleading stage) to screen

out lawsuits that have no factual basis'".  In re NAHC, Inc. Sec. Litig., 306 F.3d

1314, 1332 (3d Cir. 2002) (internal citation omitted).  The PSLRA thus allows

defendants to test the sufficiency of a complaint before incurring the substantial

costs of discovery.  See In re Heckmann Corp. Sec. Litig., No. 10-378-LPS-MPT,

2010 WL 5887794, at *3 (D. Del. Feb. 28, 2010) ("in order to reduce the cost and

burdens of discovery and prevent abusive practices, such as filing frivolous law

suits, the PSLRA permits discovery only after the court has determined the legal

sufficiency of the complaint.").

   Here, having alleged claims under Sections 14(a) and 20(a) of the

Exchange Act, Plaintiff is subject to the PSLRA, and the automatic stay thus

applies.  See Botton v. Ness Techs. Inc., et al., No. 11-3950, 2011 WL 3438705, at

*1, 3 n.1 (D.N.J. Aug. 4, 2011); In re Trump Hotel S'holder Derivative Litig.,

No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) ("Having

chosen to invoke Section 14 of the Exchange Act . . . plaintiffs are necessarily

subject to the PSLRA."); In re UnitedHealth Grp. Inc. PSLRA Litig., 643 F. Supp.

2d 1094, 1097 (D. Minn. 2009) (automatic stay applies to claims brought under

Sections 14(a) and 20(a)); In re Countrywide Fin. Corp. Derivative Litig., 542 F.

Supp. 2d 1160, 1179 (C.D. Cal. 2008) (claims brought under Sections 14(a) and

20(a) "are clearly subject to the stay").  PSLRA stays have been maintained in actions, like this one, that seek to enjoin a proposed transaction via federal securities claims.  See, e.g., Botton, 2011 WL 3438705, at *4 (denying exception to PSLRA automatic stay where plaintiff brought claims under the Exchange Act in an effort to enjoin consummation of the proposed merger); Davis v. Duncan Energy Partners L.P., 801 F. Supp. 2d 589, 591, 595 (S.D. Tex. 2011) (denying exception to PSLRA automatic stay in action seeking to enjoin proposed acquisition); Fisher v. Kanas, No. 06-CV-1187, 2006 WL 2239038, at *3 (E.D.N.Y. Aug. 4, 2006) (denying exception to PSLRA automatic stay and noting that neither delay nor an imminent shareholder vote constitutes undue prejudice); Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 722 (S.D. Cal. 1996) (indicating the inability "to complete discovery prior to" vote for election of Board members does not constitute a prejudice that is "undue").

The operation of the automatic stay is not dependent on the filing of a motion to dismiss.  Rather, courts have repeatedly applied the PSLRA's automatic stay of discovery where, as here, a motion to dismiss is anticipated.  See, e.g., In re Am. Funds Sec. Litig., 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007) (stay of discovery applied before plaintiffs filed their consolidated complaint); Fisher, 2006 WL 2239038, *2 (recognizing that "Courts have held [that] the automatic stay provision of the [PSLRA] is triggered by the mere indication by defense of its

intention to file a motion to dismiss") (alterations in original) (internal quotation marks and citations omitted); <u>Sedona Corp. v. Ladenburg Thalmann</u>, No. 03 Civ. 3120, 2005 WL 2647945, at *2 n.1 (S.D.N.Y. Oct. 14, 2005) (explaining that "[t]here is no dispute that the PSLRA stay of discovery applies when an initial motion to dismiss is contemplated, but has not yet been filed"); <u>In re DPL Inc.,</u> <u>Sec. Litig.</u>, 247 F. Supp. 2d 946, 947 n.4 (S.D. Ohio 2003) (the stay applies not only where the motion to dismiss has actually been filed, but where "it is anticipated that such a motion will be filed in the future"); <u>Newby v. Enron Corp.</u>, 188 F. Supp. 2d 684, 709 (S.D. Tex. 2002) ("discovery is stayed from the filing of the complaint <u>until</u> the court has determined the sufficiency of the plaintiff's pleading"); <u>In re Carnegie Int'l Corp. Sec. Litig.</u>, 107 F. Supp. 2d 676, 682-83 (D. Md. 2000) (noting that "well reasoned decisions have held" that the discovery stay is triggered by "the mere indication by defense of its intention to file a motion to dismiss" as "the term 'pendency' does not necessarily connot[e] the formal framing of an issue through a filing", and that "[i]t can just as easily be interpreted as connot[ing] the period while an issue is unresolved").

     C.     **The Stay Applies to Plaintiff's State Law Claims Along With His Federal Securities Claims.**

     The PSLRA automatic stay applies to federal securities <u>actions</u>, and applies to all claims in the action and not only to those brought under the federal securities laws.  <u>See, e.g.</u>, <u>Botton</u>, 2011 WL 3438705, at *3 n.1 (D.N.J. Aug. 4,

2011) ("As this action was brought alleging violations of the Exchange Act, the stay of discovery will apply to all claims in this action") (citation omitted); see also Winer Family Trust v. Queen, C.A. No. 03-4318, 2004 WL 350181, at *4 ("The Court concludes, therefore, that the PSLRA stay of 'all discovery' encompasses the breach of [state law] fiduciary duty claims set forth in the Amended Complaint"); In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) ("[T]he [PSLRA] stay applies to 'all discovery' in any 'action' under the PSLRA's purview"); Gardner v. Major Auto. Cos., No. 11-CV-1664, 2012 WL 1230135, at *4 (E.D.N.Y. Apr. 12, 2012) ("The PSLRA stay provision expressly applies to federal securities actions (not claims)."). The operation of the stay is not dependent on an independent basis for jurisdiction over the non-federal securities claims. See, e.g., In re Trump Hotel, 1997 WL 442135, at *2 (S.D.N.Y. 1997) ("There is simply nothing in either the text or the legislative history of the PSLRA that suggests that Congress intended to except federal securities actions in which there happens to be both diversity of citizenship and pendent state law claims."); see also Benbow v. Aspen Tech., Inc., No. Civ. A. 02-2881, 2003 WL 1873910, at *3 (E.D. La. Apr. 11, 2003) (holding that the PSLRA's automatic stay provision applies to plaintiffs' state law claims because plaintiffs "chose to . . . claim a violation of federal securities laws").

Applying the PSLRA stay to all claims is particularly appropriate when the state law and federal claims arise out of the same operative facts and will necessarily involve overlapping, if not identical, discovery.  See, e.g., Id. at *5; In re Altera Corp. Derivative Litig., No. C 06-03447, 2006 WL 2917578, at *1 (N.D. Cal. Oct. 11, 2006).  Here, Plaintiff's state law fiduciary duty claims and federal securities claims arise out of the same transaction, involve the same actors and turn on identical issues related to process and disclosure.  Indeed, there is no distinction between the substance of Plaintiff's claim that the directors failed to disclose material information and therefore allegedly violated their fiduciary duties under Delaware state law (see Fed. Compl. ¶¶ 129, 133), and the claim that this alleged failure to disclose also violates the Exchange Act (see Fed. Compl. ¶¶ 140-155).

While courts have on occasion refused to stay state law claims under the PSLRA, they have done so only on the basis of factors not present here.  For example, in Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162 (S.D.N.Y. 2001)[5], the court refused to stay discovery on contract and tortious

---

[5] It is also worth nothing that several courts have criticized or declined to follow Tobias.  See, e.g., Gardner, 2012 WL 1230135, at *5 ("[T]his Court respectfully disagrees with the reasoning set forth in Tobias, and . . . finds that the text of the PSLRA supports a stay of discovery as to each of plaintiffs' claims."); Benbow, 2003 WL 1873910, at *5 (holding that Tobias did not render the PSLRA's stay provision inapplicable to state law claims even "[a]ssuming arguendo that the rationale underpinning the holding of the Tobias Holdings case

interference claims that were based on "diversity of citizenship" and were "separate and distinct" from the action's federal securities claims.  Id. at 167-68. Here, no claim is pleaded under "diversity of citizenship" jurisdiction (Fed. Compl. ¶ 13), and all pleaded claims rely on the same nucleus of operative facts.  See Dipple v. Odell, C.A. No. 12-1415, 2012 WL 1548950 at *2 n.4 (E.D. Pa. May 2, 2012) (noting that Tobias addressed only "the narrow question" whether the PSLRA stay applies to state law claims brought under diversity of citizenship jurisdiction).

      D.      **Plaintiff Cannot Demonstrate an Exception to the PSLRA's Automatic Stay.**

The automatic stay under the PSLRA may be lifted only upon "the motion of any party [demonstrating] that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party".  15 U.S.C. § 78u-4(b)(3)(B); see also In re Par Pharm. Sec. Litig., 2009 WL 3234273, at *11 (D.N.J. Sept. 30, 2009) ("The PSLRA requires that all discovery and other proceedings be stayed pending any motion to dismiss unless a court finds that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." (internal quotation marks omitted)).  Neither exception applies here.

---

stands on firm ground"); Sarantakis v. Gruttadauria, No. 02 C 1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) (holding that Tobias did not support the conclusion that the PSLRA was inapplicable to the plaintiff's state law claims "even if the Court presumes [the] reasoning [in Tobias] is sound").

1.    Plaintiff cannot demonstrate that particularized discovery is necessary to preserve evidence.

Lifting the automatic stay in order to "preserve evidence" requires Plaintiff to show that there is an actual threat that evidence could be lost without such relief.   See, e.g., Winer Family Trust, 2004 WL 350181, at *5 (applying a limited exception to the PSLRA automatic stay where a key witness had been diagnosed with Stage IV brain cancer); see also In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583, 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012) (requiring a showing that "the loss of evidence is imminent as opposed to merely speculative", and finding failure to satisfy the "preserve evidence" exception to the automatic stay even though evidence was over 12 years old and in the possession of a non-party) (internal citation and quotation marks omitted); In re Heckmann Corp. Sec. Litig., 2010 WL 5887794, at *5 (declining to lift PSLRA stay where plaintiff offered only speculative assertions that the loss of evidence was imminent).  Plaintiff cannot demonstrate any facts suggesting that there is a risk, let alone an "imminent" risk, of the non-preservation of evidence in this action. This exception to the automatic stay therefore does not apply.

2.    Plaintiff cannot demonstrate that an exception to the automatic stay is necessary to prevent "undue prejudice".

Because Plaintiff Duvall cannot demonstrate that an exception to the PSLRA is necessary to preserve evidence, he must, to overcome the automatic

17

stay, demonstrate that "particularized discovery is necessary . . . to prevent undue prejudice".  15 U.S.C. § 78u-4(b)(3)(B).  Plaintiff cannot carry this burden. Plaintiff seeks discovery for the purpose of using the information at a preliminary injunction hearing and suggests that a delay in discovery would frustrate this effort. (See Pl.'s Br. at 2 ("[A]bove all, the sought discovery is vital to develop an adequate factual record in advance of Plaintiff's anticipated motion to preliminar[il]y enjoin the Proposed Transaction").)  However, this Court has held that even in the context of a motion for expedited discovery brought in advance of an upcoming shareholder vote on a merger, delay does not constitute "undue prejudice".  Botton, 2011 WL 3438705, at *1 (noting, in denying motion for expedited discovery sought to support a preliminary injunction blocking an imminent merger, that "delay in and of itself is not sufficient to establish undue prejudice, as delay is simply a part of the process in a PSLRA case.") (internal quotation marks omitted); see also Davis, 801 F. Supp. 2d at 595 ("[P]laintiff's argument that they will be prejudiced in their efforts to seek injunctive relief unless they are allowed to engage in expedited discovery before the court has decided whether they have satisfied the PSLRA's heightened pleading standard would eviscerate that heightened pleading standard.") (citation omitted).  Indeed, "delay is an inherent part of every stay of discovery required by the PSLRA".  In re Initial Pub. Offering Sec. Litig., 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002).

Plaintiff Duvall could have avoided the PSLRA's automatic stay by proceeding under state law, which he originally did by filing suit in New Jersey state court.  However, he chose to forgo this option by voluntarily withdrawing his New Jersey state law complaint and re-filing here under the federal securities law. "Any strategic disadvantage occasioned by the automatic stay is a consequence of [P]laintiff['s] strategic choice to proceed under the Exchange Act".  Dipple, 2012 WL 1548950, at *6.  The automatic stay is not an undue burden, but rather a necessary consequence of choosing to proceed under federal securities law.  Id.; see also Davis, 801 F. Supp. 2d at 595 ("Any alleged prejudice imposed by the PSLRA's mandatory stay of discovery is inherent in the plaintiffs' choice to nonsuit their . . . state case and file this action seeking relief on claims governed by the PSLRA.").

Moreover, any claim that the upcoming shareholder vote constitutes "undue prejudice" or "irreparable harm" fails because Plaintiff has an additional potential remedy that obviates the need for injunctive relief.  Namely, because Plaintiff—and the purported class of Par shareholders on whose behalf he claims to act—is a shareholder of a Delaware corporation, Delaware law entitles him to seek appraisal of his shares if he feels that TPG's premium $50 offer was inadequate or unfair in some way.  See 8 Del. C. § 262; see also Am. Gen. Corp. v. Tex. Air. Corp., 1987 WL 6337, at *1 (Del. Ch. Feb. 5, 1987) (denying plaintiffs'

19

application for a preliminary injunction enjoining a merger because "an adjustment upwards of the cash out price, whether in an appraisal proceeding or otherwise," offered plaintiffs an "adequate remedy").  Section 262 grants Delaware shareholders the right to petition a Delaware court if they feel that the merger consideration was inadequate, and the court will review the transaction and issue a ruling valuing the shareholder's shares on a per share basis, and will order the acquiring party to provide the petitioning shareholder with that price per share. The availability and mechanics of the appraisal process are fully disclosed in the Proxy filed by the Company with the SEC.  (See Proxy at p. 93.).  As such, there is no basis for imposing the substantial burdens and expense of expedited discovery for a claim that is readily addressable by a remedy at law.

In any event, the ongoing litigation in Delaware further belies any allegation that the automatic stay of the PSLRA could cause "undue prejudice". Cf. In re Adelphia Commc'ns Secs. Litig., No. 02-1781, 2003 WL 22358819, at *4 (E.D. Pa. May 13, 2003) (citing individual plaintiff's ability to make "strategic decisions, such as intervention in other suits" as a reason plaintiffs failed to demonstrate sufficient prejudice to warrant reconsideration of the court's stay). The consolidated Delaware Action, brought under state law, is not subject to a statutorily-imposed automatic stay of discovery pending a motion to dismiss.  That action and the Federal Action involve the exact same purported class of Par

shareholders,[6] virtually identical defendants[7] and identical issues related to the process leading to the merger and the disclosure in the Proxy[8].  Critically, both actions also seek the same relief—an injunction preventing the consummation of the Merger.[9]

Because Plaintiff cannot demonstrate the applicability of either exception to the PSLRA's automatic stay of discovery, his motion for expedited discovery must be denied.

## II.   MOVANT IS NOT ENTITLED TO EXPEDITED DISCOVERY.

Even apart from the PSLRA's automatic stay of discovery, Movant is not entitled to expedited discovery under the standard governing such a request.

### A.   Movant's Request for Expedited Discovery Is Unreasonable.

Although there is no controlling federal standard governing a court's determination as to whether expedited discovery is appropriate, courts in this Circuit generally apply a "reasonableness" or "good cause" standard.  See, e.g.,

---

[6] Compare Del. Compl. ¶ 32 with Fed. Compl. ¶ 31.

[7] Compare Del Compl. ¶¶ 18-31 with Fed. Compl.  ¶¶ 17-25, 27-30.  Par is not named as a defendant in the Delaware Action.

[8] Compare, e.g., Del. Compl. ¶¶ 91-92 with Fed. Compl. ¶¶ 6, 78-84 (deal protections);  Del. Compl. ¶¶ 89-90 with Fed. Compl. ¶¶ 56-63 (the role of the Board's financial advisor);  Del. Compl. ¶¶ 44-65 with Fed. Compl. ¶¶ 64-77 (the future value of Par); and Del. Compl. ¶¶ 97-112 with Fed. Compl. ¶ 85-125) (the sufficiency of the Proxy).

[9] Compare Del. Compl. at 37 with Fed. Compl. at 45.

Barbieri v. Wells Fargo & Co., C.A. No. 09-3196, 2012 WL 3089373, at *3 (E.D.

Pa. July 27, 2012) ("When faced with requests to expedite discovery under Rule

26(d), courts in the Third Circuit generally follow a 'good cause' or

'reasonableness' standard.").[10]  In applying the "reasonableness" standard, courts

determine "the need for expedited discovery by considering the overall

administration of justice against the prejudice to the responding party."  Better

Packages, Inc. v. Zheng, No. Civ. A. 05-4477, 2006 WL 1373055, at *3 (D.N.J.

May 17, 2006) (citations omitted).  That analysis weighs the "entirety of the record

to date and the reasonableness of the request in light of all of the surrounding

circumstances".  Entm't Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-

3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003) (internal quotation marks

omitted).

---

[10] The reasonableness standard is often applied when the party seeking
expedited discovery has also sought a preliminary injunction.  See, e.g., Phila.
Newspapers, Inc. v. Gannett Satellite Info. Network, Inc., No. Civ. A. 98-CV-
2782, 1998 WL 404820, at *2-3 (E.D. Pa. July 15, 1998).  Although Plaintiff has
not yet filed a motion for a preliminary injunction, he has stated his intention to do
so.  See Pl.'s Br. at 1.  In such circumstances, courts have applied the
"reasonableness" standard.  See, e.g., Dimension Data N. Am., Inc. v. Netstar-1,
Inc., 226 F.R.D. 528, 531-32 (E.D.N.C. 2005) (applying reasonableness standard
"where plaintiff requests expedited discovery in preparation for a preliminary
injunction determination" although "no such hearing or determination is pending").

1.      Plaintiff's discovery requests are overly broad and burdensome.

"[C]ourts generally deny motions for expedited discovery when the movant's discovery requests are overly broad." Phila. Newspapers, 1998 WL 404820, at *2 (citing Irish Lesbian & Gay Org. v. Giuliani, 918 F. Supp. 728, 730-31 (S.D.N.Y. 1996) (denying expedited discovery that was "not reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing")); see also Better Packages, 2006 WL 1373055 at *3 ("Where the requests [for expedited discovery] are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied"); Botton, 2011 WL 3438705, at *3 (denying motion for expedited discovery that was "overbroad and unnecessary for filing a preliminary injunction motion").

In Botton, then-Magistrate Judge Shipp denied expedited discovery in an action factually and procedurally similar to this case. There, the shareholder plaintiff sought expedited discovery in support of his motion to preliminarily enjoin a $300 million merger. Id. at *1. The Court denied the motion, finding the discovery requests, which were narrower than those Plaintiff proposes here,[11] to be "overbroad and unnecessary for filing a preliminary injunction motion". Id. at *3.

---

[11] While the shareholder plaintiff in Botton sought only four categories of documents and three depositions, Plaintiff Duvall seeks an extensive and undefined

The Better Packages decision, upon which Plaintiff relies extensively, see Pl.'s Br. at 5-7, also demonstrates that the Court should deny Plaintiff's motion on the basis of overbreadth.  There, the plaintiff sought expedited discovery in support of its motion for a preliminary injunction.  See Better Packages, 2006 WL 1373055, at *1.  Applying the reasonableness standard, the Court rejected plaintiff's motion, finding that while the requested discovery had "potential relevance . . . to the merits of the overall case", it was "overly broad".  Id. at *4. The Court explained that "[t]he scope of the requested discovery and Defendants' likely discovery in response would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery."  Id. at *5.

The Court in Botton and Better Packages scrutinized plaintiffs' proposed discovery requests to ensure that they actually were narrowly tailored. And like the requests at issue in those cases, Movant's requests here are overly broad.

First, Plaintiff includes sweeping requests for document discovery that would be overly broad and unduly burdensome in litigation on the merits, let alone

number of depositions and seven broad categories of documents.  Compare Botton, 2011 WL 3438705, at *2-3 with Pl.'s Br. at 15-17.

in a request for expedited discovery to support a preliminary injunction motion.

For example, Plaintiff requests:

> Monthly and quarterly executive and/or director packages _or any other document_ containing Par Pharma's _historical or projected operations and financial performance, internal business plans, financial projections and other estimates_ of Par Pharma's financial performance, and valuations of the Company's assets (including the internal estimates prepared by Par Pharma management that JP Morgan used in rendering any financial analyses).

(Pl.'s Br. at 16 (emphasis added).)  The request has no date limitation and is potentially unlimited in scope.  Discovery requests seeking "_any other document_" relating to the "_historical or projected operations and financial performance_" of a multi-billion dollar corporation are not narrowly tailored.  See Botton, 2011 WL 3438705, at *3 (finding insufficient particularity in discovery requests where plaintiff requested "minutes from 'any meetings' attended by 'any member' of the Board at which the Proposed Transaction or 'any other potential strategic transactions' were discussed.  This is certainly not a narrow or particularized request").  Additionally, Plaintiff seeks:

> Documents contained by or on behalf of Par Pharma in the "data room" (as referenced in the Proxy).

(Id.)  That request also lacks a date limitation and encompasses thousands of documents—most of which is unlikely to bear on Plaintiff's claims.

> Second, Plaintiff seeks to depose on an expedited basis _at least_ five

individuals, but has not limited his request to that already excessive number.  (See

id.); see also Botton, 2011 WL 3438705, at *2-3 (denying expedited discovery motion on the basis of overbreadth even though it sought only three depositions). Instead, Plaintiff states his intention to depose "executive(s)", "director(s)" and "representative(s) of various parties to the Transaction".  (Pl.'s Br. at 16.) Plaintiff's refusal to limit the number of depositions covered by his request for expedited discovery belies his claim that he seeks only "reasonable" and "narrowly tailored" discovery, and undermines any attempt to understand just how much expedited discovery he truly seeks.

Third, Plaintiff provides no time limitations on several of his proposed document requests, including his request for "any other document" relating to Par's "historical or projected operations and financial performance."  (Id.)  Such unlimited requests are inappropriate for expedited discovery.  See Dimension Data, 226 F.R.D. at 532 (denying expedited discovery request where request was not limited to the time frame relevant to the litigation).

Here, as in Better Packages, the "scope of the requested discovery and Defendants likely discovery in response would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery." 2006 WL 137055 at *5; see also Phila. Newspapers, 1998 WL 404820, at *3

26

(denying expedited discovery where it would burden the defendant with a

"potentially voluminous document production").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the

Court enforce the automatic stay under the PSLRA and deny Plaintiff's motion to

expedite discovery.

August 20, 2012                              Respectfully Submitted,


/s/ Jeffrey J. Greenbaum
Jeffrey J. Greenbaum
Scott Murray
Andrew W. Schwartz
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102-5400
Telephone:  (973) 643-7000
Facsimile:  (973) 643-6500
jgreenbaum@sillscummis.com
smurray@sillscummis.com
aschwartz@sillscummis.com

*Counsel for Defendants Peter S. Knight,
Ronald M. Nordmann, Thomas P. Rice,
Melvin Sharoky, Joseph E. Smith, Patrick J.
Zenner, Par Pharmaceutical Companies,
Inc. and Patrick G. LePore*


/s/ Adam M. Saltzman
Adam M. Saltzman
ROPES & GRAY LLP

27

1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
*Attorneys for TPG Capital, L.P., Sky Growth*
*Holdings Corporation and Sky Growth*
*Acquisition Corporation*

OF COUNSEL:

Sandra C. Goldstein
Lindsay J. Smith
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
sgoldstein@cravath.com
ljsmith@cravath.com

*Counsel for Defendants Peter S. Knight,*
*Ronald M. Nordmann, Thomas P. Rice,*
*Melvin Sharoky, Joseph E. Smith and*
*Patrick J. Zenner*

Christopher G. Green
Christine A. Rodriguez
ROPES & GRAY, LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone:  ( 617) 951-7878
Facsimile:  (617) 951-7050
christopher.green@ropesgray.com
christine.rodriguez@ropesgray.com

Martin J. Crisp
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 596-9000

Facsimile:  (212) 596-9090
mcrisp@ropesgray.com

*Counsel for Defendants TPG Capital, L.P.,
Sky Growth Holdings Corporation and Sky
Growth Acquisition Corporation*


Jim N. Kramer
Alexander Talarides
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard St.
San Francisco, CA 94105
(415) 773-5923
jkramer@orrick.com
atalarides@orrick.com

Rick Gallagher
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7397
rgallagher@orrick.com

*Counsel for Defendants Par and Patrick G.
LePore*